**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| TOMMY R. HENRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 1:08-CV-471-TFM** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., Tommy Rex Henry ("Henry") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.  When the Appeals Council rejected review,  the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g) , 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court AFFIRMS THE COMMISSIONER'S decision.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited.   The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the

correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

 The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Henry, age 44 at the time of the hearing, completed twelfth grade in special education

classes and formerly worked as a farm helper and fencer.[1]  He has not engaged in substantial gainful work activity since the alleged onset date of May 19, 2005.  Henry claims he is unable to work because he is mentally slow and has dyslexia.[2]  The ALJ found Henry is severely impaired by mild mental retardation, but that he did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3]

Henry testified that he completed high school where he was assigned to special education classes, but could not read or write.  He has a driver's license and is able to drive alone to familiar destinations, but not very much.  He has previously worked as a farm helper.  He also worked for a fence company but was terminated when he argued with his employer.  He spends his days working around the house and enjoys fishing.  Henry stated he sometimes had problems understanding instructions from his past employer but did not have trouble asking questions and was able to get help when needed.  Henry's mother, Virginia Henry, testified her son had difficulties his entire life and his employment had been limited to relatives or family friends.   Mrs. Henry believed the claimant's poor communication skills prevented him from functioning in a regular work environment.  Henry had never bought his own clothes and had never been independent of his parents.  She testified he would perform chores as directed, but sometimes became frustrated in his

---

[1]R. at 40-42.

[2]R. at 95.

[3]R. at 12.

3

interactions with others.  Finally, Mrs. Henry testified about her son's slowness in concentration and comprehension of new activities.  She related how her son almost lost sight in one eye after being injured at work, but rather than seek immediate medical help, he went home and waited for his parents to come home because he didn't know how to call them.[4]

Doug McKeown, Ph.D., conducted two evaluations of Henry and found "mild mental retardation, upper end with reasonable adaptive skills for activities of daily living."[5]  Dr. McKeown found Henry was capable of completing simple and repetitive tasks, with no indications of difficulty in "coping with work stresses in a simplified or noncomplex situation."[6]  Henry's Wechsler Adult Intelligence Scale (WAIS) scores were Verbal-66, Performance-73, and Full Scale-66, which place him in the mild range of mental retardation. Dr. McKeown's report emphasized the need for simple instructions and directions for Henry to follow.[7]  A Mental Residual Functional Capacity Assessment performed by Donald E. Hinton, Ph.D., found Henry was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to respond appropriately to changes in the work setting.[8]

---

[4]R. at 40-50.

[5]R. at 202, 197.

[6]R. at 202.

[7]R. at 197.

[8]R. at 217-18.

The ALJ decision observed that, though Henry "attended psychological evaluations(s) conducted by the Administration because of allegations of a mild mental disorder, the record does not contain objective evidence that [Henry] obtained specific treatment or counseling at a mental health facility or was prescribed medications specifically for mental health problems."[9]  The ALJ noted the medical evidence of mental retardation, but found Henry did not meet or equal the presumptively disabling medical criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05(C).[10]  The decision specifically noted that, though Henry had a full scale IQ score of 66, it was not accompanied by a physical or other mental impairment imposing an additional and significant work-related limitation of function.[11] The decision also evaluated whether Henry met or equaled Listing 12.05(D).  Henry's IQ score meets the initial criteria for this listing, but the record did not reflect the requirement of marked restrictions or difficulties in two listed areas - daily living, social functioning, or concentration, persistence, or pace; or repeated episodes of decompensation.[12]

In  evaluating the evidence in this case, the ALJ contrasted Henry's mild difficulties in social functioning with his largely independent activities of daily living, ability to care for his personal needs, and possession of a driver's license.[13]  In finding Henry is able to perform

---

[9]R. at 17.

[10]R. at 12-13.

[11]R. at 13, *see* 20 C.F.R. 404 Subpart P § 12.05(C).

[12]R. at 13-14, *see* 20 C.F.R. 404 Subpart P § 12.05(D).

[13]R. at 14.

unskilled work activities over a wide range of exertional levels, the ALJ considered Henry's daily activities, medical treatment, functional limitations, and record of performing steady work in the past.[14] Crucial to the ALJ decision was the fact that Henry was released from his last employment after an argument with a supervisor, and the absence of any past mental health treatment or medication for his condition.[15] The ALJ also cited the psychological evaluations of Henry, which indicated he was able to complete simple and repetitive work tasks, and concluded he was able to perform his past relevant work as a farm helper or fencer.[16] The finding regarding Henry's ability to perform past work rendered him ineligible for disability benefits under the Act.[17]

## III.  ISSUES

Henry raises three issues for judicial review:

1.      Whether the ALJ properly considered testimony by Virginia Henry.

2.      Whether a report of a psychological evaluation submitted to the Appeals Council is a basis for remand under Listing 12.05(D).

3.      Whether the ALJ erred in finding Henry's past employment with relatives qualified as substantial gainful activity.

## IV.  DISCUSSION

**1.      The ALJ's failure to specifically reference testimony from Virginia Henry was**

---

[14]R. at 15-16.

[15]R. at 16.

[16]R. at 17.

[17]R. at 17-18.

**not reversible error.**

Henry argues the ALJ decision does not reflect adequate consideration of testimony by his mother, Virginia Henry. The Commissioner responds the communication problems cited by Mrs. Henry were sufficiently addressed in the decision.

Specifically, Henry believes the ALJ should have discussed his mother's testimony concerning his ability to function in past workplaces. According to Mrs. Henry's testimony, her son was injured when flying metal entered his eye, but instead of seeking immediate medical help for what turned out to be a serious injury, he returned home and waited for his parents to come home. She stated he did not call his parents because he did not know how to call them. Mrs. Henry believed this behavior was typical of her son's ability to function.[18] Henry also cites a comment made to his father that a past employer refused to "babysit" Henry in the workplace.[19] These incidents are cited by Henry as examples of his severe limitations and inability to negotiate in society without assistance.[20]

The Commissioner's response cites the ALJ's direct inquiry to Henry as to his ability to ask questions of supervisors and seek help in his past jobs. Henry told the ALJ that he never had trouble asking questions or getting help when needed.[21] The Commissioner casts the ALJ's treatment of Mrs. Henry's testimony as a matter of credibility, and argues the

---

[18]R. at 49-50.

[19]R. at 50.

[20]Pl. Br. at 5.

[21]R. at 43-44.

decision reflects adequate consideration of her testimony when it noted "[W]hile it is credible that the claimant experiences some functional limitations due to mild mental retardation, it is not credible that he experiences the restrictions to the extent that render him unable to work."[22]  In arguing this finding demonstrated the ALJ's rejection of Mrs. Henry's testimony on credibility grounds, the Commissioner directs the Court to *Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir. 1983), where the Eleventh Circuit held "[T]his circuit does not require an explicit finding as to credibility," but will accept the implications which are obvious to the reviewing court.

Mrs. Henry's testimony summarized her son's lifelong problems caused by his mental retardation.  The history she presented described social promotions and special education classes, taking an oral driver's license test because he could not read well enough to take a written exam, employment with family members and friends (having never completed a job application on his own), instances of frustration when trying to communicate, and an inability to seek medical care for himself when seriously injured.[23]  The ALJ decision acknowledged this testimony by noting "some functional limitation due to mild mental retardation," but countered with Henry's work history.  The decision noted that Henry was gainfully employed from 1988 to 2003 and capable of working ten hour days, five days a week.[24]  The Court finds the ALJ's decision demonstrates consideration of Mrs. Henry's testimony,

_____

[22]R. at 16.

[23]R. at 45-50.

[24]R. at 16.

notwithstanding his failure to specifically address his treatment of her testimony.  The Eleventh Circuit has held "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a claimant's] medical condition as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

Mrs. Henry's testimony provided abundant reasons for the ALJ to limit the type of work her son was capable of performing.  She did not present any information concerning physical limitations on Henry's ability to work, and the ALJ's decision stated that no medical impairment was alleged.  The ALJ's finding that Henry is able to return to his previous unskilled work is consistent with his mother's testimony and the psychological evaluations which specifically limited him to performing simple and repetitive tasks.[25]

### 2.      The newly submitted psychological exam does not warrant remand.

Henry argues his case should be remanded to an ALJ for consideration of a psychological evaluation submitted to the Appeals Council after the ALJ issued a decision in this case.  The Commissioner argues the Appeals Council duly considered the report and determined the new information did not render the ALJ decision erroneous.  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."  *Ingram v.*

---

[25]R. at 202, 198, 28.

*Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007).

The report at issue was prepared by Fred George, Ph.D., after evaluating Henry on February 12, 2008, and submitted to the Appeals Council on March 10, 2008.[26] The Appeals Council accepted Henry's newly submitted documents, and informed him that the report, along with an affidavit from Mrs. Henry and a letter from a literacy coordinator, had been considered.[27] *See Smith v. Social Security Administration*, 272 Fed.Appx. 789, 801 (11th Cir. 2008) (accepting the Appeals Council's statement as sufficiently demonstrating its consideration of newly submitted evidence). Henry argues the report proves he meets the disability standard under Listing 12.05(D), and his case should be remanded for consideration under that listing. Henry supports this argument by emphasizing his low scores on the Vineland-2 Adaptive Behavior Scales test in skills related to communication, daily living, and socialization.[28] Henry believes the Vineland scores, as reported by Dr. George, place him within 12.05(D) because the low scores in daily living and socialization skills impose "more than moderate," or "marked" limitations in these two listing criteria.[29] On further administrative review, Henry argues, an ALJ would find that these scores, together with IQ scores in the range accepted by the listing, would meet the presumption for disability.

---

[26]R. at 24-28.

[27]R. at 2, 5.

[28]Pl. Br. at 7-10, R. at 27.

[29]Pl. Br. at 8.

The Commissioner argues the Appeals Council correctly found Dr. George's report did not render the ALJ decision erroneous.  He submits that Henry's interpretation of the Vineland test results led him to the incorrect conclusion that his daily living and social skills are properly classified as "markedly" limited.  Rather, the Commissioner views the specific finding in the George report that Henry's "adaptive behavior is consistent with a diagnosis of mild mental retardation" as in accord with the ALJ's findings.  The Commissioner also cites the ALJ's use of Henry's record of gainful employment to demonstrate he is able to perform work which is consistent with his mental limitations.

After reviewing the parties' arguments and Dr. George's report, the Court agrees with the Commissioner that Dr. George's report does not render the ALJ decision to deny benefits in this case erroneous.  *Ingram, id*.  The "moderately low" and "low" scores in communication, daily living, and socialization skills are not as easily classified as "marked" limitations, as Henry argues.  The Court's reluctance to accept Henry's characterization of the scores stems in part from the evidence of Henry's history, and demonstrated ability to work.  *See Whetstone v. Barnhart*, 263 F.Supp.2d 1318, 1325-26 (M.D. Ala. 2003) (recognizing the importance of work history and activities when reviewing criteria for mental retardation listings).  The Court is even more certain the George report would not have changed the ALJ's decision in this case because it clearly states "Mr. Henry has the intellectual and memory ability to understand and remember unskilled occupations."[30]  This

---

[30]R. at 28, ¶ 4.

finding echoes the conclusion reached by the ALJ, and severely undercuts Henry's argument that the report places him within a listing created for persons with marked limitations in daily living and social function.  Thus, the Court finds that the Appeals Council correctly evaluated the additional evidence submitted by Henry, the evidence does not render the denial of benefits erroneous, and no remand is necessary for further consideration.

**3.      The ALJ did not err in finding Henry's past work qualified as substantial gainful activity.**

Henry argues the ALJ erred in finding his past employment with family or friends qualified as "substantial gainful activity," and a remand is necessary to determine whether he can perform in a competitive market.   The Commissioner responds Henry's past employment was "past relevant work" within the context of the Act and regulations.

Henry argues his employment for family members or friends was performed under "special conditions" or in a "sheltered environment," and therefore cannot qualify as past relevant work.  He emphasizes he has never competed in the open market for a job, and cannot fill out an employment application.  He further cites *Roberts v. Apfel*, 27 F.Supp.2d 1295 (N.D. Ala. 1998), where a municipal worker was allowed to maintain his position and salary despite being unable to physically perform his job duties.  *Roberts* was remanded for a decision as to whether the employment even qualified as past relevant work for purposes of the five-step sequential evaluation process under the Act.

The Commissioner argues Henry's farm and fencing jobs fit the regulatory definition of "past relevant work" under the Act.  After citing that definition - "Past relevant work is

12

work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it" - the Commissioner argues Henry's labor and earnings qualified him as a bona fide worker.  *See*  20 C.F.R. § 404.1560(b)(1).  The situation in *Roberts*, cited by Henry for remand, has been described as a "fictional position . . . to reward loyal service and as part of his retirement."  *Brown v. Barnhart,* 410 F.Supp.2d 1287, 1299 (S.D. Fla. 2006).  However, *Brown* distinguished between truly "sheltered" work, and a work position which accommodated the particular abilities of an employee.  *Id*. at 1299-1300.

The hearing testimony shows Henry ably performed as a farm helper and fencer until he was fired from the latter position.  While his duties may have been curtailed to suit his mental abilities, there is no evidence that he did not perform the actual work for his job description.  The Court finds Henry's past employment falls within the definition of "past relevant work," and was properly used by the ALJ as a reference point for determining his eligibility for benefits under the Act.

Henry has not shown any basis for remand or reversal of his case, and the decision of the ALJ is AFFIRMED.

Done this 26th day of February, 2009.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE